IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Julius Smiley, #262734, ) | C/A No. 0:09-2039-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Robert Stevenson; Associate Warden ) | |
| Cartledge; Major Sharonda Sutton; Jon Ozmint, ) | |
| State Commissioner of Corrections; and ) | |
| Associate Warden Barkley; ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The plaintiff, Julius Smiley ("Smiley"), a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983. He is currently incarcerated at Broad River Correctional Institution ("BRCI") in Columbia, South Carolina, which is part of the South Carolina Department of Corrections ("SCDC") prison system, and has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This civil rights matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on Smiley's motion for a declaratory judgment (Docket Entry 37), motion for injunctive relief (Docket Entry 48), and motion for summary judgment (Docket Entry 52), as well as the defendants' motion for summary judgment (Docket Entry 57). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Smiley of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (Docket Entry 58.) Smiley filed a response in opposition to the defendants' motion. (Docket Entry 69.)

## BACKGROUND

The officials at BRCI have implemented a policy prohibiting talking by the inmates in the cafeteria. If an inmate violates this policy, he is removed from the cafeteria and provided a bag meal. Smiley alleges that this policy violates his First Amendment and Eighth Amendment rights. (Docket Entry 9.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while

the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.      Exhaustion of Administrative Remedies**

As an initial matter, the defendants assert that Smiley has not exhausted his available administrative remedies with regard to the claims he asserts in this action as required by the Prison Litigation Reform Act, specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Here, the defendants have presented affidavits and other evidence, showing that Smiley has not properly completed the administrative grievance process. Smiley does not dispute that he has not pursued the administrative grievance process with regard to his claims; rather, Smiley argues that the defendants prohibition of talking in the cafeteria is a "practice" not a "policy," and therefore is not a grieveable matter. Smiley alleges that an inmate may only file a grievance concerning "a Policy[;] Disciplinary Action; Property; Goodtime; etc[.]" (Docket Entry 69 at 1.) However, Smiley has failed to demonstrate that SCDC's grievance procedures are limited to those four specific categories and that the grievance procedures were unavailable to Smiley. See Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (concluding that section 1997e(a) does not permit the court to consider an inmate's subjective beliefs in determining whether administrative procedures are "available"); see also Porter, 534 U.S. at 524 (stating that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Further, Defendant Stevenson attests that "[i]nmates who have complaints about the cafeteria procedures . . . are able to file a grievance or request to staff to address their concerns." (Stevenson Aff. ¶ 14, Docket Entry 57-2.) Accordingly, the court finds that Smiley's claims have not been properly exhausted pursuant to 42 U.S.C. § 1997e(a) and should therefore be dismissed.

**C.     Merits**

Even if Smiley had properly exhausted these claims, the court finds that the defendants are entitled to summary judgment.

    **1.     First Amendment**

Inmates retain their First Amendment right of free speech in prison. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, "[f]reedom of speech . . . does not comprehend

the right to speak on any subject at any time." Am. Commincations Assn. v. Douds, 339 U.S. 382, 394 (1950). Moreover, in Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." To meet this standard, the Turner Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. at 89; see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Smiley bears the burden of disproving that this policy, or "practice" as he now refers to it, is valid. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Smiley alleges that the prohibition on talking in the cafeteria is designed to rush inmates to eat their food faster and instead of chewing, a prisoner is forced to swallow food in such a way that is bad for digestion. (Docket Entry 69.) The unrefuted affidavits submitted by the defendants show that BRCI is responsible for feeding approximately 1,500 inmates three meals per day. (Stevenson Aff. ¶ 3, Docket Entry 57-2.) The inmates are fed in shifts in the main cafeteria, which holds 280 inmates at a time. (Stevenson Aff. ¶ 3, 10, Docket Entry 57-2.) The affidavits state that the "no talking" procedure increases efficiency

Page 5 of 9 PJG

at meal service. (Stevenson Aff. ¶ 15, Docket Entry 57-2 at 4-5; see also Ward Aff. ¶ 8, Docket Entry 57-3 at 3.) Further, Defendant Stevenson and Robert Ward, Director of Operations for SCDC, both attest to enhanced security as a result of the prohibition. For example, Defendant Stevenson avers that the prohibition on talking in the cafeteria reduces the opportunity for verbal disagreements or arguments between inmates that could escalate into fights or other physical disturbances and prevents inmates from gathering in groups and conspiring or planning assaults, escape attempts, and any other dangerous activities. (Stevenson Aff. ¶¶ 7-9, Docket Entry 57-2 at 2-3.) Further, the prohibition has resulted in decreased noise levels in the crowded cafeteria, thus allowing the security staff to better monitor the inmates, intercede to prevent a potential disturbance, and enable the officers to more easily communicate among themselves. (Stevenson Aff. ¶¶ 9, 11, Docket Entry 57-2 at 3.)

Based on the unrefuted evidence, the court finds that the defendants have articulated a rational connection between the practices of which Smiley complains and the legitimate security concerns for other prisons and the guards. These practices, while uncomfortable for Smiley, are reasonably related to that interest. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). There is no indication that Smiley cannot engage in speech outside of the cafeteria setting. Further, based on the record it is undisputed that permitting talking in the cafeteria decreases efficiency and security. Finally, there is no indication in the record of any available alternative that would serve the interests of this limited prohibition. Accordingly, the court finds that the conditions of which Smiley complains do not violate the Turner standard. See, e.g., Hendrickson v. McCreanor, 199 Fed. Appx. 95 (3d Cir. 2006) (unpublished) (upholding a similar policy that prohibited talking by inmates during meals in a dining

hall and applying the Turner test and concluding that the policy did not violate the inmates' First or Eighth Amendment rights); Duncan v. Quarterman, C/A No. 2:09-0187, 2009 WL 2614395 (N.D. Tex. Aug. 26, 2009) (unpublished) (holding that a no-talking policy in certain parts of the prison did not violate a prisoner's First Amendment rights).

### 2. Eighth Amendment

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

To the extent that Smiley alleges that the no-talking practice constitutes cruel and unusual punishment, the court agrees with the defendants that such a claim fails under the Eighth

Amendment. (Docket Entry 57-1 at 9 n.2.) The court finds that prohibiting a prisoner from talking during the limited time that he or she is in the cafeteria and providing a prisoner with a bag lunch instead of a hot meal for violating this prohibition does not constitute a serious deprivation of a basic human need.

**C.  Qualified Immunity**

Additionally, based on the foregoing, the defendants are entitled to qualified immunity, as their conduct did not violate clearly established statutory or constitutional rights.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ( "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

**RECOMMENDATION**

For all of the foregoing reasons, the court recommends that Smiley's motion for a declaratory judgment (Docket Entry 37) and motion for summary judgment (Docket Entry 52) be denied.  The court further recommends that the defendants' motion for summary judgment (Docket Entry 57) be granted.  In light of these recommendations, the court recommends that Smiley's motion for injunctive relief (Docket Entry 48) and motion for a hearing (Docket Entry 60) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 30, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).